1 WATERS KRAUS & PAUL
Ingrid M. Evans (179094)
2 ievans@waterskraus.com
Sundeep Patel (242284)
3 spatel@waterskraus.com
711 Van Ness Avenue, Suite 220
4 San Francisco, CA 94104
Telephone: 415/296-6060
5 214/777-0470 (fax)

WATERS KRAUS & PAUL
Charles S. Siegel (*Pro Hac Vice* application to
be submitted)
csiegel@waterskraus.com
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214/357-6244
214/357-7252 (fax)

6 LEVY PHILLIPS & KONIGSBERG, LLP
Steven J. Phillips (*Pro Hac Vice*
7 application to be submitted)
sphillips@lpklaw.com
8 Victoria E. Phillips (*Pro Hac Vice*
application to be submitted)
9 vphillips@lpklaw.com
800 Third Avenue, 13th Floor
10 New York, New York 10022
Telephone: 212/605-6200
11 212/605-6290 (fax)

E-filing

12 Attorneys for Plaintiffs

13 [Additional counsel listed on signature page]

14

15 UNITED STATES DISTRICT COURT

16 NORTHERN DISTRICT OF CALIFORNIA

17 BURT XAVIER and JAMES FRANKLIN, ) Case No.
Individually, and on Behalf of Themselves and )
18 All Others Similarly Situated. )
) **CLASS ACTION**
19 Plaintiffs, )
) CLASS ACTION COMPLAINT FOR:
20 vs. )
) 1. Violations of Unfair Competition Law
21 PHILIP MORRIS USA, INC., a Virginia )  (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);
corporation. ) 2. Violations of Consumer Legal Remedies
22 )  Act (Cal. Civ. Code §§ 1750, *et seq.*);
Defendant. ) 3. Breaches of Warranty (Cal. Comm. Code §
23 )  2314);
) 4. Strict Liability Design Defect;
24 ) 5. Negligent Design and Testing; and
) 6. Equitable Claim for Medical Monitoring
25 )
) DEMAND FOR JURY TRIAL
26 _____ )

27     1.    Plaintiffs Burt Xavier and James Franklin, by and through their attorneys, Waters

28 Kraus & Paul and Levy, Phillips & Konigsberg, allege on behalf of themselves and all others

- 1 -

1  similarly situated in this class action.  Upon information and belief, as well as the investigation of

2  counsel, Plaintiffs allege as follows:

3  **INTRODUCTION**

4  2.   This is a class action.  It is brought on behalf of a class of residents of the State of

5  California as of the date of the filing of the initial Complaint in this action who

6  (a)   are fifty (50) years of age or older;

7  (b)   have cigarette smoking histories of twenty-pack-years or more using Marlboro

8  cigarettes;[1]

9  (c)   currently smoke Marlboro cigarettes, or have quit smoking Marlboro

10  cigarettes within one (1) year of the date of the filing of the initial Complaint in this action;

11  (d)   have smoked Marlboro cigarettes within the State of California; and

12  (e)   are not diagnosed as suffering from lung cancer, or under investigation by a

13  physician for suspected lung cancer, as of the date that judgment may be entered or relief obtained

14  from this action.

15  3.   The relief sought by Plaintiffs and the class they wish to represent is equitable in

16  nature, and discrete in focus.  Plaintiffs wish to compel Defendant Philip Morris USA, Inc. ("Philip

17  Morris") to provide them, through a court-supervised program, with a specific form of medical

18  surveillance for early detection of lung cancer.

19  4.   This form of surveillance is known as Low Dose CT Scanning of the chest ["LDCT"].

20  It is a safe, efficacious and inexpensive technique, which, for the first time, provides a means to

21  identify and diagnose lung cancers at an early stage, when they are still curable.  Simply stated, this

22  surveillance, if made available, will save the lives and ease the suffering of a significant number of

23

24

25  [1]"Marlboro cigarettes" is defined herein as the entire line of the Marlboro Brand Family of

26  cigarettes, which were manufactured and sold by Defendant Philip Morris, USA (and its predecessor entities) since 1955, and which consist of roughly forty-five different packages (e.g., "Marlboro Full

27  Flavor 100's Filter Box," "Marlboro Lights 100's Filter Box," "Marlboro Ultra Lights 100's Filter Box," etc.).

28

1 | the members of the proposed class. Of course, it will provide to class members the invaluable
2 | opportunity to discover lung cancers early and institute treatment immediately.

3 |      5.     Lung cancer is the leading cause of cancer death in the United States and in the State
4 | of California. On a nationwide basis, over 160,000 Americans die annually from this disease.

5 |      6.     Over eighty percent of these lung cancer deaths are caused by cigarette smoke.

6 |      7.     Lung cancer, when diagnosed in its early stage ["Stage I" lung cancer] is usually
7 | curable.

8 |      8.     On the other hand, when lung cancer has progressed at the time of diagnosis ["Stage
9 | II" or higher], the prospects for successful treatment and cure are dim.

10 |      9.     Accordingly, lung cancer victims' prospects for cure and survival are critically
11 | dependent upon the ability to diagnose this disease as early as possible.

12 |      10.     Conventional forms of medical surveillance [*e.g.*, chest x-rays and sputum cytology]
13 | are poor diagnostic tools for identifying early stage lung cancers.

14 |      11.     However, LDCT, a surveillance technique which has been established recently, can
15 | identify and lead to the diagnosis of Stage I lung cancers which heretofore would have remained
16 | undiagnosed until the cancer progressed to an advanced stage. As a consequence, the prospects for
17 | cure and survival of those individuals who obtain LDCT are dramatically improved.

18 |      12.     Moreover, this LDCT can be administered to large populations at modest expense,
19 | and with a lower dose of radiation than is associated with an annual mammogram.

20 |      13.     The Plaintiffs herein and the proposed class are a population which, by virtue of their
21 | age and history of smoking Marlboro cigarettes, is at an increased risk for developing lung cancer.

22 |      14.     Plaintiffs and the proposed class would benefit from LDCT surveillance because it
23 | would provide them with an effective means of discovering the existence of tumors at a much earlier
24 | stage than is otherwise possible, and thus would provide them with an earlier diagnosis of cancerous
25 | growths and earlier treatment of such tumors.

26 |      15.     By the same token, Defendant Philip Morris' conduct, or more properly, its
27 | misconduct in manufacturing and selling Marlboro cigarettes, was and remains egregious and

28 |

Class Action Complaint

1  renders it liable to Plaintiffs and the proposed class of Marlboro smokers to provide them with the
2  equitable remedy sought herein.

3      16.    This is also true because the LDCT screening procedure sought is presently
4  unavailable as a benefit in most, if not all, private or public health insurance programs.

5      17.    Although there are many and varied legal theories of liability which may or have been
6  asserted against Defendant Philip Morris in tobacco personal injury or wrongful death litigation, the
7  instant Plaintiffs and the proposed class proceed in this action on a particular factual premise and
8  accordingly upon discrete theories of fault.

9      18.    It is Plaintiffs' contention that it was a wrongful action of Defendant Philip Morris to
10  design, manufacture, market, and sell its Marlboro cigarettes because such cigarettes delivered an
11  excessive and unreasonably dangerous quantity of carcinogens when smoked by humans.

12      19.    It is further contended that, at all relevant times, Defendant Philip Morris had
13  available to it feasible alternative designs, which would have reduced the cancer-causing content of
14  Marlboro cigarettes, and thus the risk of developing lung cancer as a result of the prolonged and
15  heavy use of Marlboro cigarettes. Moreover, these alternative designs would have been acceptable
16  to consumers, providing them with whatever pleasure, enjoyment, or "utility" as might be ascribed,
17  however perversely, to cigarette use.

18      20.    Plaintiffs do not seek to otherwise recover for personal injury, or to recover
19  compensatory or punitive damages from Defendant Philip Morris. Rather, they wish only to obtain,
20  as will be described below, a program that will provide them with one valuable form of surveillance,
21  LDCT, and nothing else.

22                    **JURISDICTION AND VENUE**

23      21.    As a matter of Jurisdiction in this action is predicated upon 28 USC § 1332(c) in that
24  Plaintiffs and all proposed class members are citizens and residents of the State of California and
25  Defendant is a citizen and resident of the State of Virginia. The matter in controversy exceeds the
26  amount or value of five million ($5,000,000) dollars.

27      22.    Venue in this action is predicated upon 28 USC § 1391(b) and (c). This action is
28  properly before this Court as a result of Defendant's numerous contacts with and/or certain acts,

- 4 -

1   omissions, obligations and/or liabilities arising in the Northern District of California, including its

2   marketing and sale of Marlboro cigarettes within the District at all relevant times. Venue is also

3   proper in the Northern District because it is where Plaintiff Burt Xavier and many proposed class

4   members purchased and/or used Marlboro cigarettes during a significant duration of the relevant

5   time.

6                                              **PARTIES**

7       23.    Plaintiff Burt Xavier is a citizen of California who resides in Stanislaus County.

8       24.    Plaintiff James Franklin is a citizen of California who resides in San Diego County.

9       25.    All Plaintiffs have a smoking history of twenty pack-years[2] or more of using

10  Marlboro cigarettes.

11      26.    All Plaintiffs presently continue to smoke Marlboro cigarettes or have quit the use of

12  Marlboro cigarettes within one year of the date on which this Complaint is filed.

13      27.    None of the Plaintiffs is presently diagnosed with lung cancer.

14      28.    All of the Plaintiffs are at significantly increased risk for developing lung cancer as a

15  consequence of their use of Marlboro cigarettes, and specifically as a consequence of the excess

16  quantities of carcinogens delivered by Marlboro cigarettes.

17      29.    All of the Plaintiffs were subject to the influence of nicotine as a consequence of their

18  prolonged Marlboro use.

19      30.    All Plaintiffs are desirous of obtaining LDCT lung cancer surveillance so that any

20  undiagnosed lung cancer can be detected as early as possible in order to dramatically improve their

21  chances for survival and cure as well as the quality of their lives.

22      31.    LDCT is not presently available to Plaintiffs for lung cancer surveillance through

23  their personal health insurance.

24

25

26  [2] A "pack-year" is the number of packs of cigarettes smoked per day multiplied by the number of years. For

27  example, one pack of cigarettes smoked per day for one year equals one pack-year. Two packs of cigarettes
    smoked per day for one year equals two pack-years.

28

                                      Class Action Complaint

32.     Defendant Philip Morris USA, Inc. ("Philip Morris"), formerly Philip Morris, Inc., is a Virginia corporation with its principal place of business in a state other than California.   At all times relevant hereto, Philip Morris was in the business of manufacturing, promoting, marketing, distributing, and selling Marlboro cigarettes.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs make these allegations pursuant to Rule 23 of the Federal Rules of Civil Procedure.   Each prerequisite of Rule 23 applicable to this case is met.

34.     The class is composed of at least tens of thousands of persons, the joinder of whom is impracticable except by means of a class action. The disposition of their claims in a class action will benefit both the parties and the Court.   At all relevant times, Defendant sold and continues to sell hundreds of thousands or millions of packs of Marlboro cigarettes in the State of California each year, and thus the class is sufficiently numerous to make joinder impracticable, if not completely impossible.

35.     Plaintiffs assert claims that are typical of the claims of the entire class.   Plaintiffs will fairly and adequately represent and protect the interests of the class.   Plaintiffs have no interests antagonistic to those of the class.   Plaintiffs have retained counsel who are competent and experienced in this type of litigation.

36.     Defendant has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.

37.     Plaintiffs and the class have suffered the same harm as a result of Defendant's wrongful conduct as alleged herein.   Absent a class action, class members will continue to suffer harm, thereby allowing these alleged violations of law to proceed without remedy.

38.     Plaintiffs anticipate that there will be no insurmountable difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.     All conditions precedent to the maintenance of this action have been met.

40.     There are common questions of law and fact applicable to the entire class.

## DEFENDANT PHILIP MORRIS' MISCONDUCT

41.     Mainstream cigarette smoke is commonly described in two phases – the vapor phase and the particulate phase.

42.     The vapor phase begins when a cigarette is lit and puffed. On the first and each subsequent puff, the solid material in the cigarette turns into a vapor in which more than 4,000 chemicals have been identified.

43.     Subsequently, the particulate phase occurs when the vapor of chemicals condenses into smoke in the form of microscopic, liquid particles.

44.     The particulates in mainstream smoke are measurable by the smoking of cigarettes by a machine under a method set forth by the Federal Trade Commission ("FTC").

45.     Under the FTC testing method, the mainstream smoke is collected on a filter pad that collects 99% of the cigarette smoke particulates over 0.1 micron. The total particulate matter of the mainstream smoke is known as the TPM.

46.     Cigarette tar is the weight of the TPM minus nicotine and water. Neither nicotine nor water causes lung cancer. Cigarette tar – consisting of all the other measured particulates – contains carcinogens which cause lung cancer.

47.     Numerous carcinogens have been specifically identified in cigarette tar including but not limited to Tobacco Specific Nitrosamines and Polynuclear Aromatic Hydrocarbons.

48.     Philip Morris has known since the 1950's, or earlier, that carcinogens in cigarette tar cause cancer. For example, in a study published by Dr. Ernst Wynder, *et al.*, in 1953, cancer was induced in laboratory animals with the application of cigarette tar to mouse skin.

49.     Philip Morris also has known since the 1950's, or earlier, that the greater the exposure to carcinogens from cigarette tar, the greater the risk of cancer. In 1957, Dr. Wynder published further findings, observing a clear dose response between the amount of carcinogens from tar applied to the skin of mice and the percentage of skin papilloma and carcinoma-bearing animals in the test group.

50.     Philip Morris' corporate representatives and long-time research scientists have admitted under oath in Court that the more cigarette tar to which a human is exposed, the greater the

- 7 -

1   likelihood of lung cancer, and that a cigarette which truly delivers lower amounts of tar to humans is

2   a safer cigarette.   These admissions by Philip Morris are supported by epidemiological studies

3   reflecting a greater risk of lung cancer in those smoking at least one pack per day of relatively higher

4   tar cigarettes – as determined by FTC testing – for twenty (20) years or more.

5       51.   Since the initial marketing of Marlboro cigarettes in 1955 through the present ("the

6   relevant time period"), Philip Morris has utilized numerous cigarette design parameters to specify

7   the approximate amount of cigarette tar delivered to a smoker by smoking a cigarette.

8       52.   During the relevant time period, all Marlboro cigarettes – regardless of their

9   designation as Regular, Medium, Light, Ultra Light, etc. – delivered greater than 5 mg of cigarette

10  tar when smoked by the FTC smoking machine.

11      53.   During the relevant time period, Philip Morris has purposely designed all of its

12  Marlboro cigarettes to deliver an excessive amount of carcinogens when smoked by humans.   Thus,

13  at all relevant times, Philip Morris had the ability to design and market a cigarette that delivered the

14  same enjoyment characteristics as Marlboros (*e.g.*, nicotine, flavor, taste, and emotional effects)

15  while significantly diminishing the amount of tar.

16      54.   During the relevant time period, Marlboro cigarettes that have delivered a relatively

17  lower amount of tar under FTC testing, also have delivered a relatively lower amount of nicotine,

18  while maintaining an approximate 10:1, or higher, tar to nicotine ratio.   This has always been true for

19  all cigarettes with a Marlboro "Light" designation.   For example, under FTC testing, Regular "Full

20  Flavor" Marlboro cigarettes deliver 17 mg tar and 1.3 mg nicotine; Marlboro "Light" cigarettes

21  deliver 11 mg tar and .9 mg nicotine; Marlboro "Ultra Light" cigarettes deliver 6 mg tar and .5mg

22  nicotine.

23      55.   Numerous authorities, including the National Cancer Institute, have concluded that

24  smokers will unconsciously "compensate" by taking deeper, more intense puffs when smoking

25  cigarettes with relatively lower FTC machine-measure yields of tar and nicotine in order to

26  unconsciously obtain more nicotine.   This deeper, more intense puffing results in the inhalation of

27  not only greater amounts of nicotine, but greater amounts of tar in the same proportion.

28

- 8 -

56. Philip Morris has acknowledged on its website that: "[S]mokers 'compensate' for the reduced tar and nicotine yields of some brands by smoking them differently than they would higher yield brands. For example, they may take more or larger puffs. . . . Generally speaking, the more intensely a smoker smokes a cigarette, the more tar and nicotine he or she will inhale from that cigarette."

57. Philip Morris has manufactured, marketed, and sold Marlboro "Light" cigarettes from 1971 through the present. During all of these years, Philip Morris purposely designed these cigarettes to deliver relatively lower amounts of tar under FTC testing, while knowing full well that human smokers would unconsciously compensate, as described above, and actually inhale higher amounts of tar, which contain carcinogens that cause lung cancer.

58. In fact, since "Light" cigarettes were first marketed in 1971 through the present, a person who smoked Marlboro "Light" cigarettes – which yield greater than 10 mg of tar under FTC testing – would have inhaled approximately the same amount of tar as delivered by regular Marlboro "Full Flavor" cigarettes.

59. During the relevant time period, it was technologically feasible for Philip Morris to design a cigarette which prevented smokers from taking the deeper, more intense inhalation that characterizes compensatory smoking. Philip Morris could have accomplished this, among other ways, by simply increasing the "resistance to draw" on the cigarette, which prevents the smokers from substantially increasing their puff volume on the cigarette. This is in sharp contrast to the Marlboro "Light" cigarette, which was intentionally designed to permit full compensation.

60. During the relevant time period, it was technologically feasible for Philip Morris to design a cigarette which: (a) delivered 1 mg, or less, of tar under FTC testing; and (b) did not permit a smoker to significantly "compensate" when smoking. Indeed, it was technologically feasible to design a cigarette that would deliver more than 1 mg of tar, but significantly less than 6 mg of tar.

61. For example, in 1979, Philip Morris developed a cigarette which delivered one tenth (0.1) of a milligram, or less, of tar under FTC testing, and which did not permit a smoker to compensate significantly. This cigarette was the original, lowest tar Cambridge cigarette, which was initially advertised by Philip Morris, but was removed from the market shortly thereafter.

Class Action Complaint

62.     After Philip Morris removed the original, lowest tar Cambridge cigarette from the market, it sold other versions of Cambridge, which delivered higher amounts of tar.  Thus, Philip Morris did not seriously market the original, lowest tar Cambridge brand cigarette, but instead used this original design merely to establish a brand image for Cambridge as the "lowest tar" cigarette.

63.     During the relevant time period, not only was it feasible for Philip Morris to reduce tar levels to 1 mg, or less, while utilizing a filter that was designed to prevent the smoker from significantly compensating, but it also was feasible for Philip Morris to significantly reduce the amount of specific, known carcinogens in cigarette smoke through tobacco selection and the manufacturing process.

64.     For example, during the relevant time period, Philip Morris knew that different tobaccos have different levels of specifically identified carcinogens.  Specifically, Burley tobacco is known to be relatively high in nitrogen, and as such, contains relatively high amounts of nitrosamines, including tobacco-specific nitrosamines, which are known to be carcinogenic.

65.     During the relevant time period, Philip Morris purposely included significant amounts of Burley tobacco in the tobacco blend for all Marlboro cigarettes, further contributing to the defective design of such cigarettes.

66.     During the relevant time period, it was technologically feasible for Philip Morris to use a tobacco blend for Marlboro cigarettes that did not utilize Burley tobacco, and that delivered a lower level of carcinogens including a lower level of volatile nitrosamines, including tobacco-specific nitrosamines.

67.     Moreover, during the relevant period, it also was technically feasible for Philip Morris to design a cigarette that would effectively deliver, for instance, less than one-half the amount of carcinogens delivered by Marlboros, without in any way diminishing the so-called enjoyment of the product as a matter of taste, nicotine delivery, or emotional effects.  Such a product, while still carcinogenic, would have decreased each class member's risk of lung cancer by over 50%.

68.     As a proximate result of the aforementioned defects, the Plaintiffs and each and every class member were exposed to an excessive amount of carcinogens – the result of smoking Marlboro cigarettes for a minimum of 20 pack-years – representing a minimum of at least 7,300 packs of

1    Marlboro cigarettes, and a minimum of 146,000 Marlboro cigarettes smoked by Plaintiffs and each
2    and every class member.

3         69.    The aforementioned defects in Marlboro cigarettes were a proximate cause, or a
4    substantial factor, in significantly increasing the risk of lung cancer for Plaintiffs and each and every
5    class member, irrespective of the individual medical histories of the Plaintiffs and of each and every
6    class member.

7         70.    In addition and/or in the alternative, the aforementioned defects in Marlboro
8    cigarettes were a proximate cause, or substantial factor, in substantially increasing the lung cancer
9    risk of the Plaintiffs and each and every class member, as compared to what the lung cancer risk, if
10   any, would have been had the Plaintiffs and each and every class member smoked a safer cigarette
11   which delivered substantially less carcinogens when smoked by humans.

12        71.    In addition and/or in the alternative, as the proximate result of the aforementioned
13   defects, each and every pack-year of Marlboro cigarettes smoked by Plaintiffs and each and every
14   class member, substantially increased and substantially aggravated the lung cancer risk of Plaintiffs
15   and each and every class member.

16        72.    In addition, as a proximate result of the aforementioned defects in Marlboro
17   cigarettes, Plaintiffs and each and every class member suffered sub-clinical and/or sub-cellular injury
18   and damage to the structures of his or her lungs.

19        73.    Finally, Philip Morris' deliberate refusal to market the feasible alternative cigarettes
20   described above was the consequence of an egregious conspiracy and so-called "gentleman's
21   agreement" among American cigarette manufacturers to refrain from marketing such products.

22   **PLAINTIFFS' REMEDY**
23        74.    In the United States, at the present time, roughly 25 percent of the population smokes
24   cigarettes. The lifetime risk of developing lung cancer among cigarette smokers is approximately
25   ten percent. Accordingly, more than 170,000 new patients are diagnosed each year with lung cancer.
26        75.    In those cases where Stage I lung cancer is diagnosed, the prospects for cure, usually
27   through surgical resection, are excellent.

28

76.     Unfortunately, ordinary chest x-rays, sputum cytology, and physical examination are distinctly ineffective in identifying or diagnosing early stage lung cancer. Accordingly, as an historical matter, there was no systematic way to diagnose or identify lung cancer until it had progressed to Stage II. At this point, however, with Stage II disease, a patient's prognosis is grim.

77.     The development of LDCT has changed this equation. Research in this country and Japan has demonstrated that CT screening is capable of identifying pulmonary nodules that commonly turn out to be malignant upon further diagnostic workup, nodules too small to be identified by means of traditional radiography.

78.     Various programs have now been designed to institute screening for lung cancer using this LDCT regimen.

79.     These programs involve:

(a)     Outreach and education to inform people in the class of the availability of this screening program and of its potential benefits and harms.

(b)     Informed consent procedures to advise potential members of the screening program of the possible harms or consequences of the screening so that they might make an educated and informed decision about whether to participate in the program.

(c)     Uniform practices respecting the manner and the timing or interval in which the screening technique will be administered.

(d)     Uniform practices respecting the manner in which these findings are to be interpreted and what steps need to be taken to follow-up with those individuals whose CT findings are equivocal and require further investigation.

(e)     Medical counseling respecting the results of the CT scans.

80.     The cost of this screening program on an annualized per patient basis, including all administrative and educational expenses, is quite modest.

81.     As a matter of California Law, Defendant Philip Morris, given its misconduct, is legally and/or equitably responsible to provide Plaintiffs and the proposed class with an LDCT lung cancer surveillance program.

# COUNT I

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.*

82.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in each paragraph with the same force and effect as if hereinafter set forth at length.

83.     Philip Morris has violated Business & Professions Code §17200's prohibition against engaging in an unlawful business acts or practices by, *inter alia*, the following:

(a)     Violating the CLRA, Civil Code § 1750, *et seq.* (as further alleged herein); and

(b)     Violating Cal. Comm. Code § 2314 (as further alleged herein).

84.     Business & Professions Code § 17200 also prohibits any "fraudulent … business act or practice." As detailed in the preceding paragraphs, Philip Morris' conduct did deceive and is likely to deceive Plaintiffs, the class, and the public by, *inter alia*, engaging in the following deceptive business practices:

(a)     Philip Morris knew and/or should have known of the aforementioned defects of Marlboro cigarettes, but failed to disclose and/or concealed the defects of Marlboro cigarettes to/from Plaintiffs and other members of the class at the time they purchased their Marlboro cigarettes.

(b)     Philip Morris intended that the foregoing omissions and concealments would enable it to continue to sell Marlboro cigarettes.

(c)     Philip Morris deprived Plaintiffs and the class of a meaningful opportunity to choose not to purchase the Marlboro cigarettes, because they could not have reasonably discovered the defects at the time of purchase, and because Philip Morris failed to disclose and/or concealed the defects of the Marlboro cigarettes.

(d)     Philip Morris continued to sell Marlboro cigarettes as purchased by Plaintiffs and members of the class, despite knowing its Marlboro "Light" cigarettes were defective because of Philip Morris' purposeful design of all of its Marlboro cigarettes to deliver an excessive amount of carcinogens when smoked by humans at the time of such purchase.

1  (e)  Purposely designing all its Marlboro "Light" cigarettes to deliver relatively
2  lower amounts of tar under FTC testing, while knowing full well that human smokers would
3  unconsciously compensate, as described above, and actually inhale higher amounts of tar, which
4  contain carcinogens that cause lung cancer.

5  (f)  Purposely including Burley tobacco, which it knew to be relatively high in
6  nitrogen, and as such contains relatively high amounts of nitrosamines, including tobacco-specific
7  nitrosamines which are known to be carcinogenic, despite the feasibility of using a tobacco blend
8  that did not utilize Burley tobacco and delivered a lower level of carcinogens.

9  85.  Defendant is also in violation of the "unfair ... business act or practice" prohibitions
10  of Section § 17200, *inter alia*, by engaging in the following deceptive business practices:

11  (a)  by causing the Marlboro cigarettes to be marketed and sold to Plaintiffs and
12  the class, Philip Morris engaged in unfair, conduct, which caused and continues to cause substantial
13  injury to Plaintiffs and the class, and which is oppressive and unethical; and

14  (b)  Philip Morris' conduct is also "unfair" in that it offends public policy and
15  violates the laws stated.

16  86.  The gravity of Philip Morris' alleged wrongful conduct outweighs any purported
17  benefits attributable to such conduct. There were also reasonably available alternatives to Philip
18  Morris to further its business interests, other than voluntarily placing its defective Marlboro
19  cigarettes into the stream of commerce.

20  87.  Philip Morris also violated California Business & Professions Code § 17200's
21  prohibition against "unfair, deceptive, untrue or misleading advertising" and/or any act prohibited by
22  Business & Profession Code § 17500, by engaging in the unfair, deceptive, untrue and misleading
23  advertising described above, including representing to Plaintiffs and the class at the time of purchase
24  that the Marlboro cigarettes have certain characteristics, uses, benefits, standards and/or qualities that
25  the Marlboro cigarettes do not have, and by engaging in such conduct which is likely to deceive
26  Plaintiffs and the class.

27  88.  Plaintiffs reserves the right to allege other violations of law which constitute other
28  "unlawful, unfair or fraudulent business act or practice," any "unfair, deceptive, untrue or misleading

1  advertising" and any act prohibited by Business & Profession Code § 17500. Such conduct is
2  ongoing and continues to this date.

3      89.    As a result of Philip Morris' above-described acts and omissions, Plaintiffs and the
4  class were injured in fact and are entitled to relief.

5      90.    Philip Morris, by committing the acts alleged above, has been and continues to be
6  engaged in fraudulent, unfair, unlawful, deceptive and misleading business practices in violation of
7  the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq*.

8      WHEREFORE, Plaintiffs and the class pray for relief as set forth in the prayer for relief.

9  **COUNT II**

10 **VIOLATIONS OF CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE**
11 **§§ 1750 *ET SEQ*. – INJUNCTIVE RELIEF ONLY**

12     91.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in each
13 paragraph with the same force and effect as if hereinafter set forth at length.

14     92.    This cause of action is brought pursuant to the CLRA. Plaintiffs bring this action on
15 their own behalf and on behalf of the class members, all of whom are similarly situated consumers
16 within the meaning of Civil Code § 1781.

17     93.    Defendants are a "person" as defined by Cal. Civ. Code § 1761(c).

18     94.    Marlboro cigarettes are "goods" within the meaning of Cal. Civ. Code § 1761(a)-(b).

19     95.    Plaintiffs' purported purchase of Marlboro cigarettes, as well as class members'
20 purchase of Marlboro cigarettes, constitute "transactions" within the meaning of Cal. Civ. Code
21 §§ 1761(e) and 1770.

22     96.    Defendant violated and continues to violate the Act by engaging in the following
23 deceptive practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs
24 which were intended to result in, and did result in, the sale of Marlboro cigarettes:

25     (a)    Representing that the Marlboro cigarettes have characteristics, . . . uses [or]
26 benefits . . . which [it] does not have (Cal. Civ. Code § 1770(a)(5));

27     (b)    Representing that Marlboro cigarettes are of a particular standard, quality or
28 grade, . . . if [it is] of another (Cal. Civ. Code § 1770(a)(7));

1      (c)     Advertising goods . . . with the intent not to sell them as advertised (Cal. Civ.

2   Code § 1770(a)(9));

3      (d)     Representing that Marlboro cigarettes have been supplied in accordance with

4   a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

5      97.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's

6   trade or business, and were capable of deceiving a substantial portion of the purchasing public.

7      98.     Defendant knew that it made material misrepresentations concerning the Marlboro

8   cigarettes.

9      99.     Defendant was under a duty to Plaintiffs and the class either to disclose material

10   information or, at the very least, to not make misrepresentations regarding Marlboro cigarettes.

11     100.     Defendant had exclusive knowledge of, or was in a superior position to know, the true

12   state of facts about the Marlboro cigarettes.

13     101.     Plaintiffs and the class members could not reasonably have been expected to learn or

14   discover Philip Morris' material misrepresentations and omissions since, to this day, Philip Morris

15   continues to misrepresent and conceal the defects of the Marlboro cigarettes alleged herein from the

16   Plaintiffs, class members, and the public. Philip Morris made material misrepresentations and

17   omissions to Plaintiffs and class members by:

18     (a)     knowing and/or should have known of the aforementioned defects of

19   Marlboro cigarettes, but failed to disclose and/or concealed the defects of Marlboro cigarettes

20   to/from Plaintiffs and other members of the class at the time they purchased their Marlboro

21   cigarettes;

22     (b)     intending that the foregoing omissions and concealments would enable it to

23   continue to supply Plaintiffs and the class with defective Marlboro cigarettes;

24     (c)     depriving Plaintiffs and the class of a meaningful opportunity to choose not to

25   purchase the Marlboro cigarettes, because they could not have reasonably discovered the defects at

26   the time of purchase, and because Philip Morris failed to disclose and/or concealed the defects of the

27   Marlboro cigarettes;

28

1    (d)    continuing to sell Marlboro cigarettes as purchased by Plaintiffs and members

2   of the class, despite knowing its Marlboro cigarettes were defective because of Philip Morris'

3   purposeful design of all of its Marlboro cigarettes to deliver an excessive amount of carcinogens

4   when smoked by humans at the time of such purchase.

5    (e)    purposely designing all its Marlboro "Light" cigarettes to deliver relatively

6   lower amounts of tar under FTC testing, while knowing full well that human smokers would

7   unconsciously compensate, as described above, and actually inhale higher amounts of tar, which

8   contain carcinogens that cause lung cancer; and

9    (f)    purposely including Burley tobacco, which it knew to be relatively high in

10   nitrogen, and as such contains relatively high amounts of nitrosamines, including tobacco-specific

11   nitrosamines which are known to be carcinogenic, despite the feasibility of using a tobacco blend

12   that did not utilize Burley tobacco and delivered a lower level of carcinogens.

13   102.   Defendant's material misrepresentations and omissions described in the preceding

14   paragraphs were intentional, or alternatively, made without the use of reasonable procedures adopted

15   to avoid such an error.

16   103.   In making these material misrepresentations and failing to disclose material facts,

17   Defendant has knowingly and intentionally concealed material facts and breached its duty to not do

18   so or its duty to not make such misrepresentations and omissions in the first place.

19   104.   The facts that Defendant affirmatively misrepresented and concealed from Plaintiffs

20   and the class are material in that a reasonable consumer would have considered them to be important

21   in deciding whether to purchase Marlboro cigarettes.

22   105.   Such wrongful actions and conduct are ongoing and continuing. Unless Defendants

23   are enjoined from continuing to engage in such wrongful actions and conduct, members of the

24   consuming public will continue to be damaged by Defendant's conduct.

25   106.   As a result of such actions, Plaintiffs and class members have been damaged.

26   107.   If Defendant fails to rectify or agree to rectify the problems associated with the

27   actions detailed above and give notice to all affected consumers within 30 days of the date of written

28

- 17 -

1  notice pursuant to § 1782 of the Act, Plaintiffs will amend this Complaint to add claims for actual,
2  punitive and statutory damages, as appropriate.

3      WHEREFORE, Plaintiffs and the class pray for relief as set forth in the prayer for relief.

## COUNT III

### BREACH OF IMPLIED WARRANTY, CAL. COMM. CODE
### § 2314

7      108.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in each
8  paragraph with the same force and effect as if hereinafter set forth at length.

9      109.    At all relevant times herein, Philip Morris marketed, tested, manufactured, promoted,
10 distributed, and/or sold Marlboro cigarettes for use by the public at large including Plaintiffs and the
11 proposed class. Plaintiffs and the class bought the Marlboro cigarettes from Philip Morris.

12     110.    Philip Morris knew or had reason to know of the uses for which Marlboro cigarettes
13 were intended and impliedly warranted said product as merchantable, fit for the ordinary purposes
14 for which such goods are used, and of fair and average quality.

15     111.    Contrary to the implied warranty, Marlboro cigarettes were not of merchantable
16 quality or fit for their intended use or of fair and average quality, because said product is
17 unreasonably dangerous and unfit for the ordinary purpose for which it was used.

18     112.    As a result of Philip Morris' aforementioned breaches of warranty and conduct,
19 Plaintiffs and the class were damaged.

20     113.    The aforementioned breaches of warranty were a substantial factor in causing
21 Plaintiffs and the class to be at increased risk of developing lung cancer, and therefore to require the
22 medical surveillance described herein.

23     114.    Applying any warranty limitation that might be asserted by Philip Morris would be
24 unlawful and unconscionable for several reasons. The Marlboro cigarettes contained the above-
25 described defects at the time of purchase. Though Philip Morris knew and/or was reckless in not
26 knowing of the defects of the Marlboro cigarettes, Plaintiffs and the class could not reasonably
27
28

1  discover the defects of the Marlboro cigarettes at the time of purchase, and therefore lacked any

2  meaningful opportunity to decline purchase of the Marlboro cigarettes.

3       WHEREFORE, Plaintiffs and the class pray for relief as set forth in the prayer for relief.

4                                    **COUNT IV**

5                          **STRICT LIABILTY DESIGN DEFECT**

6       115.   Plaintiffs repeat, reiterate, and reallege each and every allegation contained in each

7  paragraph with the same force and effect as if hereinafter set forth at length.

8       116.   Philip Morris, while regularly engaged in the aforementioned business activities, did

9  design, develop, manufacture, sell, market, and/or distribute Marlboro cigarettes which were

10  purchased and smoked by the Plaintiffs and by members of the proposed class.

11      117.   The product possessed a defect in its design

12      118.   The defect in Marlboro cigarettes existed at the time when the cigarettes left Philip

13  Morris' possession. The Marlboro cigarettes were expected to and did reach the usual consumers,

14  including Plaintiffs and the proposed class, without substantial change in the condition in which they

15  were designed, produced, manufactured, sold, distributed, and marketed by Philip Morris.

16      119.   By smoking the Marlboro cigarettes, Plaintiffs and the proposed class used the

17  product for the purpose and manner intended by Philip Morris.

18      120.   The Marlboro cigarettes failed to perform as safely as an ordinary consumer would

19  expect when used in an intended or reasonably foreseeable manner.

20      121.   Philip Morris knew or should have known that, at all times mentioned, the Marlboro

21  cigarettes were in a defective condition and not reasonably safe for their intended use.

22      122.   Philip Morris knew or should have known that cigarettes caused lung cancer and

23  other diseases, and placed those who smoked these cigarettes at greatly elevated risk for developing

24  lung cancer.

25      123.   With this knowledge, Philip Morris voluntarily designed Marlboro cigarettes in a

26  defective condition for consumption by Plaintiffs and the proposed class.

27

28

124. During all relevant time periods, up to and including the present, while Defendant Philip Morris designed Marlboro cigarettes in a defective condition, the company was able to create a "safer" cigarette which delivered substantially fewer carcinogens when smoked by a human.

125. Instead, Philip Morris, during all relevant time periods up to and including the present, defectively designed the Marlboro cigarette to deliver an excessive amount of carcinogens when smoked by humans.

126. Philip Morris distributed a defective product, i.e., Marlboro cigarettes, which created an unreasonable risk to the health of consumers, including Plaintiffs and the proposed class. Defendant is therefore strictly liable for the medical surveillance now required by the intended use of this defective product.

127. The aforementioned defects in Marlboro cigarettes were a substantial factor in causing Plaintiffs to be at increased risk of developing lung cancer, and therefore to require the medical surveillance described herein.

128. The risk of danger is inherent in the design of Marlboro cigarettes and outweighs any benefits of that design.

WHEREFORE, Plaintiffs and the class pray for relief as set forth in the prayer for relief.

### COUNT V

### NEGLIGENT DESIGN AND TESTING

129. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in each paragraph with the same force and effect as if hereinafter set forth at length.

130. Philip Morris had a legal duty to create a reasonably "safer" cigarette which delivered substantially fewer carcinogens when smoked by a human.

131. Philip Morris breached this duty by negligently, recklessly, and/or intentionally designing the Marlboro cigarette to deliver excessive amounts of carcinogens when smoked by humans.

132. At all relevant times, Philip Morris further breached this duty, and was negligent, by failing to properly test and inspect Marlboro cigarettes and other cigarettes, for purposes of identifying, developing, implementing, and bringing to market a reasonably safer cigarette design.

1      133.    At all relevant times, Philip Morris failed to employ the state of knowledge and

2  technology then available to the tobacco industry.

3      134.    Philip Morris thereafter caused Marlboro cigarettes to be shipped from the place of

4  manufacture and caused them to be delivered to a place or point within the State of California where

5  it was foreseeable that they would be, and were in fact, purchased by the public, including Plaintiffs

6  and the proposed class.

7      135.    During all relevant time periods, Philip Morris knew or should have known that

8  Marlboro cigarettes, and similarly designed cigarettes, would cause lung cancer and other serious

9  health problems.

10      136.    The aforementioned defects in Marlboro cigarettes were a substantial factor in

11  causing Plaintiffs to be at increased risk of developing lung cancer, and therefore to require the

12  medical surveillance described herein.

13      WHEREFORE, Plaintiffs and the class pray for relief as set forth in the prayer for relief.

14  **COUNT VI**

15  **EQUITABLE CLAIM FOR MEDICAL MONITORING**

16      137.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in each

17  paragraph with the same force and effect as if hereinafter set forth at length.

18      138.    As set forth above, at all relevant times herein, Defendant designed, produced,

19  manufactured, and sold cigarettes, which, even if used properly, substantially and unnecessarily

20  elevated Plaintiffs' and the class members' likelihood of developing lung cancer.

21      139.    Even if it might not lead to the imposition of criminal sanctions, this activity by

22  Defendant Philip Morris was wrongful behavior of a willful and aggravated nature.  Simply put,

23  motivated by extreme greed, and a reckless and depraved disregard of the virtual certainty that the

24  sale of its addictive and deadly products would condemn hundreds of thousands of its customers to

25  awful disease and lingering deaths, Philip Morris set out to sell its defective and deadly products to

26  children and others.  To the extent that there is not a legal remedy available to Plaintiffs, Defendant's

27  egregious conduct and its devastating consequences impose a duty on the Court under California law

28  to fashion an appropriate equitable remedy to redress the grave effects of Philip Morris' misconduct.

140.    The programmatic medical monitoring through LDCT sought by Plaintiffs in the instant action is appropriately tailored to both the nature of Philip Morris' misconduct, and the injuries that it has inflicted on Plaintiffs and the proposed class's members.

141.    In that connection, Plaintiffs have set forth allegations regarding their:

      (a)    exposure,

      (b)    to a toxic substance,

      (c)    caused by the Defendant's misconduct,

      (d)    resulting in an increased risk,

      (e)    of a serious disease, illness, or injury,

      (f)    for which a medical test for early detection exists,

      (g)    and for which early detection is beneficial, meaning that a treatment exists which can alter the course of the illness,

      (h)    which tests can be prescribed by a qualified physician,

      (i)    and which tests only can be provided through the mechanism of a program, rather than through the award of money damages.

142.    Thus, as set forth more fully in the allegations contained in the preceding paragraphs, Plaintiffs have amply established their and the proposed class members' eligibility to state an equitable cause of action for medical monitoring.

143.    This equitable action is not subject to either the affirmative defenses which might apply to legal actions, or to their statutes of limitations, but rather are subject to the doctrines of laches or unclean hands, neither of which would pertain in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the class, and the general public, pray for judgment against Defendant as follows:

A.    Declaring this action to be a class action properly maintained pursuant to Fed. R. Civ. P. 23;

B.    Granting temporary, preliminary, and permanent equitable and/or injunctive relief as permitted by law, equity, or applicable statutory provisions, thereby compelling Defendant Philip

- 22 -

1 Morris to provide Plaintiffs and the proposed class with an adequately funded Court-supervised and

2 administered lung cancer surveillance program to:  1) implement an outreach program to notify

3 prospective class members of the availability and benefits of the program, 2) provide Plaintiffs and

4 prospective class members with information so that they might exercise informed consent to join the

5 program, 3) provide ongoing screening itself, 4) provide information to screened Plaintiffs and class

6 members respecting the results of screening, 5) pay for counsel fees and other expenses associated

7 with the prosecution of this action and the administration of the program, 6) keep proper records

8 respecting the outcome of the screening program, and 7) provide for all administrative expenses

9 associated with establishing the eligibility of any class member for this program;

10   C.   Awarding Plaintiffs the costs and disbursements of this action, including attorneys'

11 and experts' fees and costs and all other consequential losses and expenses; and

12   D.   Granting such other and further relief as the nature of the case may require and as this

13 Court deems just and proper under the circumstances.

### JURY DEMAND

15   Plaintiffs and the class hereby demand a trial by jury to the extent permissible.

16 Dated: May 14, 2010

WATERS KRAUS & PAUL

By: _____ FOR
        INGRID M. EVANS

WATERS KRAUS & PAUL
INGRID M. EVANS (179094)
ievans@waterskraus.com
SUNDEEP PATEL (242284)
spatel@waterskraus.com
711 Van Ness Avenue, Suite 220
San Francisco, CA  94104
Telephone:  415/296-6060
214/777-0470 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WATERS KRAUS & PAUL
CHARLES S. SIEGEL (*Pro Hac Vice* application to be submitted)
csiegel@waterskraus.com
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214/357-6244
214/357-7252 (fax)

LEVY PHILLIPS & KONIGSBERG, LLP
Steven J. Phillips (*Pro Hac Vice* application to be submitted)
sphillips@lpklaw.com
Victoria E. Phillips (*Pro Hac Vice* application to be submitted)
vphillips@lpklaw.com
800 Third Avenue, 13th Floor
New York, New York 10022
Telephone: 212/605-6200
212/605-6290 (fax)

Attorneys for Plaintiffs

Class Action Complaint