1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BURT XAVIER and JAMES FRANKLIN,
individually and on behalf of themselves
and all others similarly situated,

          Plaintiffs,

  v.

PHILIP MORRIS USA INC., a Virginia
corporation,

          Defendant.

_____/

No. C 10-02067 WHA

**ORDER DENYING
JUDGMENT ON THE
PLEADINGS, PARTIALLY
GRANTING SUMMARY
JUDGMENT, AND
DENYING CLASS
CERTIFICATION**

**INTRODUCTION**

      In this putative class action seeking medical monitoring for heavy smokers, defendant

Philip Morris USA Inc. moves for judgment on the pleadings as to two claims and also moves for

summary judgment on the entire action.  At the same time, plaintiffs Burt Xavier and James

Franklin move for class certification.  For the reasons stated below, defendant's motion for

judgment on the pleadings is **DENIED**, defendant's motion for summary judgment is **GRANTED IN**

**PART AND DENIED IN PART**, and plaintiffs' motion for class certification is **DENIED**.

**STATEMENT**

      Plaintiffs Burt Xavier and James Franklin seek to represent a state-wide class of

asymptomatic Marlboro smokers and recent quitters who are more than fifty years old and have at

least a twenty-pack-year smoking history (Compl. ¶ 2).  Plaintiffs define the unit "pack-year" as

**United States District Court**
For the Northern District of California

1   the product of the number of cigarette packs smoked per day and the number of years the smoking

2   habit has continued.  Thus, a twenty-pack-year smoking history could mean a pack a day for

3   twenty years, or two packs a day for ten years, and so on — at least 146,000 individual

4   cigarettes (*id.* ¶ 68).

5           This action differs from the typical tobacco action because plaintiffs do not seek

6   compensatory or punitive damages for personal injury or wrongful death.  Instead, the action

7   seeks medical monitoring for healthy smokers in the form of low-dose CT scanning of the chest.

8   According to plaintiffs, this scan is a new, largely unavailable technology that is safer than x-rays

9   and far better at detecting lung cancer in its early stages.  Early diagnosis dramatically improves

10  survival odds.  This action also differs from the typical medical monitoring action, because

11  plaintiffs do not seek money to pay for screening by providers already operating in the medical

12  market.  Instead, they want Philip Morris to supply the chest scans themselves by establishing and

13  funding a court-supervised screening program.  Plaintiffs propose that the program would provide

14  outreach, information, ongoing testing, notice of results, counseling, record keeping, and

15  administration (*id.* ¶¶ 74–81).

16          Plaintiffs contend that Philip Morris acted wrongfully because its Marlboro cigarettes

17  delivered excessive amounts of carcinogens.  According to plaintiffs, Philip Morris could have

18  designed its cigarettes differently such that the cigarettes would have delivered the same

19  enjoyment characteristics (*e.g.*, nicotine, flavor, taste, and emotional effects) while delivering a

20  significantly smaller amount of cancer-causing agents (*id.* ¶ 53).  For example, plaintiffs allege

21  that the tobacco blend Philip Morris used in its Marlboro cigarettes needlessly contained the

22  Burley variety of tobacco, which "is known to be relatively high in nitrogen, and as such, contains

23  relatively high amounts of nitrosamines, including tobacco-specific nitrosamines, which are

24  known to be carcinogenic" (*id.* ¶ 63–66).  Philip Morris also could have, it is said, increased the

25  "resistance to draw" in its cigarettes, which would have prevented "compensatory smoking" —

26  the phenomenon that smokers unconsciously tend to take deeper, more intense puffs when

27  smoking cigarettes that are "lighter" than those to which they are accustomed (*id.* ¶¶ 55–59).  The

28  alternative cigarette design plaintiffs propose would represent "at least a six to sixty-fold decrease

**United States District Court**
For the Northern District of California

in carcinogenicity" as compared to "the least lethal Marlboro" otherwise available (Dkt. No. 74 at 3; Compl. ¶ 60–61).

Plaintiffs allege that Philip Morris was able to manufacture such an alternative cigarette but chose not to do so as "the consequence of an egregious conspiracy and so-called 'gentleman's agreement' among American cigarette manufacturers to refrain from marketing such products" in order to preserve more profitable market shares (Compl. ¶ 73; Dkt. No. 74 at 4). Plaintiffs also allege that Philip Morris deceptively withheld from consumers information relating to the technological feasibility of producing such a safer alternative cigarette (Compl. ¶¶ 91–107).

Based on these factual allegations, plaintiffs filed a class action complaint in May 2010 enumerating six claims for relief: (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (3) breach of implied warranty, Cal. Com. Code § 2341; (4) strict liability design defect; (5) negligent design and testing; and (6) medical monitoring. A motion to dismiss the first and last claims was granted, leaving only the middle four (Dkt. No. 39).

This action is one of several "identical" actions against Philip Morris being prosecuted in different states by different plaintiffs but the same core counsel (Dkt. No. 47 at 2, n.3). So far, these actions have achieved mixed results. The New York action was dismissed, partially on the pleadings and partially on summary judgment. In the Massachusetts action, a class has been certified for a merits trial on a limited set of claims. The Florida action is in its infancy.[1] Both sides lean heavily upon favorable findings in these other actions as proof that they should prevail on the instant motions. While the existence and progress of these other actions is noteworthy, their outcomes are not binding on the instant action, and all issues raised in this action must be decided independently based on the law that applies here in California. This order follows full briefing and a hearing on all three motions.

---

[1]The New York action is *Caronia v. Philip Morris USA, Inc.*, Civ. No. 06-00224 (CBA) (SMG), in the United States District Court for the Eastern District of New York. The Massachusetts action is *Donovan v. Philip Morris USA, Inc.*, Civ. No. 06-12234 (NG), in the United States District Court for the District of Massachusetts. The Florida action is *Gargano v. Philip Morris USA, Inc.*, Civ. No. 10-24042 (PAS), in the United States District Court for the Southern District of Florida. Plaintiffs' counsel of record in this action from Levy Phillips & Konigsberg, LLP also represent the plaintiffs in the New York and Massachusetts actions. The Florida plaintiffs are represented by counsel who also have entered appearances in the Massachusetts action.

**United States District Court**
For the Northern District of California

**ANALYSIS**

Each of the three motions will be considered in turn.

### 1.   DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS.

Pursuant to FRCP 12(c)), Philip Morris moves for judgment on the pleadings as to plaintiffs' fourth and fifth claims for relief — strict liability design defect, and negligent design and testing. "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleading as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). The parties have fought their Rule 12(c)) war on two fronts: (1) what standard of causation applies to the claims in question; and (2) whether the complaint adequately pleads such causation. Because the parties' disagreement over the applicable causation standard runs through all three motions, careful attention to that issue is warranted.

### A.   Applicable Causation Standard.

The parties agree that "proximate causation" is an element of plaintiffs' design-defect claims, but they interpret this element differently. Defendants argue that it requires but-for causation, whereas plaintiffs argue that defendants' alleged misconduct must be only a substantial factor contributing to the alleged harm (Br. 3–5; Opp. 7–9). Neither side is entirely correct.

In product-liability actions, "California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations." *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968 (1997). Plaintiffs emphasize the California Supreme Court's guidance that "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Id.* at 978. This gloss is lifted from the asbestos context, in which the problems of concurrent independent causes and unidentifiable tortfeasors have required specialized legal treatment. As such, it does not tell the whole story.

When California adopted the Second Restatement's "substantial factor" test, the phrase "substantial factor" was hailed as a grammatical improvement, assuaging concern that lay jurors misinterpreted the phrase "proximate cause" to mean "the cause that is spatially or temporally

closest to the harm." Thus, "the 'substantial factor' test subsumed the 'but for' test." *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991). The "substantial factor" test California adopted from the Second Restatement applies the traditional "but for" cause in most circumstances, but provides an exception for use if concurrent independent causes are present. *Viner v. Sweet*, 30 Cal. 4th 1232, 1239–40 (2003).

For purposes of this analysis, concurrent independent causes "are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." *Id.* at 1240. For example, if two gunmen shot the same victim at the same time, each bullet might be a sufficient independent cause of the victim's death. The harm alleged in this action is plaintiffs' increased *risk* of lung cancer, which plaintiffs' claim entitles them to relief in the form of medical monitoring. Apart from defendants' alleged misconduct, no other independent event or circumstance is alleged to be a sufficient cause of this harm. Accordingly, the exception does not apply and the but-for standard governs. *Ibid.*

### B.    Adequacy of Pleadings in Complaint.

Having determined that a but-for standard of causation applies to plaintiffs' design-defect claims, this order finds that the complaint adequately pleads causation. Plaintiffs specifically plead that defendants' alleged misconduct was a "proximate cause" or "substantial factor" in causing plaintiffs an elevated risk of cancer (Compl. ¶¶ 68–72). The complaint also includes a litany of factual allegations that are sufficient to render these legal conclusions plausible. For example, plaintiffs allege that "the greater the exposure to carcinogens from cigarette tar, the greater the risk of cancer" (*id.* ¶ 49) and that "Philip Morris had the ability to design and market a cigarette that delivered the same enjoyment characteristics as Marlboros (*e.g.*, nicotine, flavor, taste, and emotional effects) while significantly diminishing the amount of tar" (*id.* ¶ 53).

Defendants argue that plaintiffs "fail to allege that their proposed alternatively designed 'safer' cigarette would have avoided an increased risk of lung cancer and a need for medical monitoring" (Br. 2). The plain allegation that defendants' failure to implement the alternative design *proximately caused* plaintiffs' increased lung-cancer risk (and corresponding need for medical monitoring) logically implies that implementation of the safer design would have avoided

1    the alleged harm.  A complaint need not set forth every logical equivalent to each statement

2    it contains.

3         Defendants further seize upon a statement in the complaint that the alternative design,

4    "while still carcinogenic, would have decreased each class member's risk of lung cancer by

5    over 50%" (Compl. ¶ 67).  Defendants mischaracterize this statement as a concession "that the

6    allegedly non-defective cigarettes still would have exposed them to highly carcinogenic cigarettes

7    that would produce a risk of lung cancer fully half of what Plaintiffs now face" (Br. 5).  Relying

8    on this misreading, defendants urge the Court to adopt the conclusion of a district court decision

9    in the New York iteration of this litigation.  That decision reasoned that plaintiffs' proposed

10   alternative cigarette might not be safer by a large enough margin to eliminate smokers' need for

11   medical monitoring.  *Caronia v. Philip Morris USA, Inc.*, Civ. No. 06-00224 (CBA) (SMG),

12   2011 WL 338425, at *10–12 (E.D.N.Y. Jan. 13, 2011).

13        Plaintiffs allege that defendants' failure to implement an alternative product design was

14   responsible for plaintiffs' elevated lung-cancer risk and corresponding need for medical

15   monitoring.  This allegation subsumes the lesser point that smoking the safer cigarette would not

16   have increased plaintiffs' risk levels enough to require medical monitoring.  Precise identification

17   of the critical risk reduction factor may be a fact issue for trial, but plaintiffs' allegation that an

18   alternative design could have reduced risk "by over 50%" does not doom the complaint at the

19   Rule 12(c) stage.  Without commenting on the difficulties plaintiffs might face in *proving* the

20   causation element of their design-defect claims, this order finds that they have adequately *pled* it.

21   Philip Morris's motion for judgment on the pleadings is **DENIED**.

22        **2.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

23        Pursuant to FRCP 56, Philip Morris moves for summary judgment as to all four claims for

24   relief that remain in the action.  "One of the principal purposes of the summary judgment rule is

25   to isolate and dispose of factually unsupported claims or defenses."  *Celotex Corp. v. Catrett*,

26   477 U.S. 317, 323–24 (1986).  Summary judgment is proper when "there is no genuine dispute as

27   to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).  A

28   dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the

1   non-moving party, and "material" only if the fact may affect the outcome of the case.

2   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  In this analysis, all reasonable

3   inferences must be drawn in the light most favorable to the non-moving party.  *Johnson v. Racnho*

4   *Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).  Unsupported conjecture or

5   conclusory statements, however, cannot defeat summary judgment.  *Surrell v. Cal. Water*

6   *Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

7           Where the party moving for summary judgment would not bear the burden of proof at

8   trial, that party bears the initial burden of either producing evidence that negates an essential

9   element of the non-moving party's claims, or showing that the non-moving party does not have

10  enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *See*

11  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving

12  party does not satisfy its initial burden, then the non-moving party has no obligation to produce

13  anything and summary judgment must be denied.  If, however, the moving party satisfies its

14  initial burden of production, then the non-moving party must produce admissible evidence to

15  show there exists a genuine issue of material fact.  *Id.* at 1102–03.  Philip Morris's summary

16  judgment arguments advance along three main lines of attack, each of which will be addressed

17  in turn.

18                  **A.      Privity (Breach-of-Implied-Warranty Claim).**

19          The privity attack in Philip Morris's summary judgment motion is aimed only at

20  plaintiffs' breach-of-implied-warranty claim under Section 2314 of the California Commercial

21  Code (count three).  Philip Morris argues that plaintiffs cannot establish that a privity relationship

22  existed between the parties, as is required to sustain their breach-of-warranty claim.  On this

23  point, Philip Morris is correct.

24          A plaintiff asserting a breach-of-warranty claim under Section 2314 of the California

25  Commercial Code "must stand in vertical contractual privity with the defendant."  *Clemens v.*

26  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  A buyer and seller stand in privity

27  only if they are in adjoining links of the distribution chain; an end consumer who buys products

28  from a retailer is not in privity with the manufacturer of the products.  *Ibid.*  In this action,

United States District Court

For the Northern District of California

plaintiffs do not dispute that they bought Marlboro cigarettes only from retailers, such as liquor stores, and not directly from Philip Morris itself.  Plaintiffs assert instead that they can overcome the privity hurdle through one of three supposed exceptions to the rule (Opp. 15–20). They cannot.

In *Clemens*, the Ninth Circuit surveyed the established exceptions to California's privity rule in the context of a claim for breach of implied warranty under Section 2314.  The Ninth Circuit found:  "Some particularized exceptions to the rule exist.  The first arises when the plaintiff relies on written labels or advertisements of a manufacturer.  The other exceptions arise in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser."  *Clemens*, 534 F.3d at 1023 (internal citations omitted). An independent survey of the relevant case law confirms that this assessment was, and remains, accurate.

The plaintiff in *Clemens* sued the manufacturer of an allegedly defective automobile he had purchased from a retailer.  Like plaintiffs in this action, he lacked privity with the manufacturer-defendant because he had not purchased the allegedly defective product directly from the manufacturer.  And, like plaintiffs here, he did not claim that any of the privity exceptions enumerated above applied directly.  Instead, he urged "that they are exemplary rather than exhaustive, and that similar equities support[ed] an exception for his case."  *Ibid.*  The Ninth Circuit declined to make such an exception and affirmed dismissal of his breach-of-warranty claim.  In so doing, it noted:  "California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."  *Id.* at 1023–24.

So too here.  The categorical exceptions plaintiffs proffer — for third-party beneficiaries, for dangerous instrumentalities, and for products destined for human consumption, all perhaps wise policy — simply do not exist in the California jurisprudence.  The decisions plaintiffs cite for these supposed exceptions are either not binding, not on point, or both.  The category labels plaintiffs apply to the established exceptions overstate their reach.  Although the exceptions plaintiffs urge may carry logical and equitable appeal, this order declines to recognize them,

because doing so would require venturing beyond the bounds that the California state courts have set.

*First*, plaintiffs argue that a third-party beneficiary exception disposes of the privity requirement "where the product was meant to be used or consumed by a third party who is injured and brings suit" (Opp. 15–16). Not so. Some federal district court judges erroneously have inferred a third-party exception to California's privity rule from a single 1978 decision by the California Court of Appeal, *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978). The *Gilbert* decision dealt with a plaintiff who contracted with a general contractor to build a building and later sued a subcontractor whom the contractor had hired to work on the project. That decision explicitly did "not need to decide the issue of privity" because it found that the plaintiff was a third-party beneficiary of the contract between the general contractor and the subcontractor. *Gilbert*, 82 Cal. App. 3d at 69–70; *see Outdoor Servs., Inc. v. Pabagold, Inc.*, 185 Cal. App. 3d 676, 683 (1986). No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale.

*Second*, plaintiffs argue that "the privity requirement has been relaxed in cases involving dangerous instrumentalities" (Opp. 16). Though true, this relaxation is not so great as to encompass the factual scenario at hand. The most recent decision plaintiffs cite formulates the dangerous instrumentalities exception as follows: "Another approach which extends the privity doctrine to include a person other than the direct buyer occurs when an inherently dangerous instrumentality causes harm to a buyer's employee, the employee is considered to be in privity with his employer." *Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 721 (2001). The other decision plaintiffs cite regarding inherently dangerous instrumentalities also addresses injury to an employee of the purchaser of the allegedly dangerous item. *See Vallis v. Canada Dry Ginger Ale, Inc.*, 190 Cal. App. 2d 35 (1961). Plaintiffs here do not contend that they were *required* to smoke 146,000 Marlboros in the course of their *employment*. Accordingly, the

United States District Court

For the Northern District of California

narrow exception for inherently dangerous instrumentalities does not apply.  This order does not comment on whether cigarettes are inherently dangerous instrumentalities.

*Third*, plaintiffs argue that "California courts also have held that a showing of privity is unnecessary" where "products are intended for human consumption" (Opp. 16).  This characterization of the case law is overbroad.  The decisions plaintiffs cite recognize specific exceptions for foodstuffs, pharmaceuticals, and pesticides.  Regarding this line of cases, the California Supreme Court has not closed "the door to the development of other exceptions as law and justice and changing economic conditions might require," but at present no other exceptions have been made by California courts.  *Arnold*, 91 Cal. App. 4th at 720.  No blanket rule has been articulated to cover *all* products intended for human consumption, and the rationale underlying the exceptions for foodstuffs, pharmaceuticals, and pesticides has not been extended to cigarettes.  A good public policy argument likely lies for such an extension, but, it is up to the California courts — not federal courts sitting in diversity — to make it.

This order finds that plaintiffs are not in privity with Philip Morris, nor within an exception to the privity requirement of their Section 2314 claim.  The claim also cannot be saved by plaintiffs' Rule 56(f) argument that Philip Morris's summary judgment motion is "procedurally premature" because "the only discovery that has occurred to date . . . has related exclusively to whether class certification is proper" (Opp. 24).  A party seeking additional discovery under FRCP 56(f) bears the burden of showing that the evidence sought exists and that it would prevent summary judgment.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920–21 (9th Cir. 1996).  Plaintiffs admit they lack privity with Philip Morris, and their supposed exceptions to the privity rule fail as a matter of law.  No amount of discovery could cure plaintiffs' privity problem.

Plaintiffs' breach-of-implied-warranty claim (count three) is **DISMISSED**.  Only three claims for relief now remain in the action:  deceptive practices in violation of the California Consumer Legal Remedies Act (count two); strict liability design defect (count four); and negligent design and testing (count five).

**B.     Causation (All Remaining Claims).**

The next line of attack in Philip Morris's summary judgment motion focuses on causation. Philip Morris argues that plaintiffs are unable to prove that Philip Morris's alleged misconduct caused plaintiffs' alleged injuries.  The relevant causal link varies among the remaining claims, so they will be considered in turn.

**(1)     Design-Defect Claims (Counts Four and Five).**

In resolving Philip Morris's motion for judgment on the pleadings, this order already found that a but-for standard of causation applies to plaintiffs' design-defect claims.  Philip Morris argues that plaintiffs cannot meet this standard "[b]ecause both Plaintiffs admitted that they did not and would not have smoked the alternatively designed cigarettes they propose — and that they have not and would not smoke them even today, though such cigarettes are available and have been for some time" (Br. 8).  Such an admission would indeed be catastrophic for plaintiffs' case, *but they have made no such admission*.  The deposition testimony Philip Morris relies on to support this statement does not go nearly so far.

As to Burt Xavier, Philip Morris cites testimony indicating Xavier knows low-tar cigarettes are available on the market, but never chose to switch cigarette brands and is not interested in smoking the low-tar cigarettes currently available (Br. 7).  As Philip Morris notes, however, Xavier explained that he tried one such low-tar cigarette brand but "didn't like the flavor," and therefore believes he would not enjoy smoking any of the low-tar cigarettes currently on the market (Webb Exh. D at 123, 126, 128–31).  By contrast, the alternative cigarette design plaintiffs propose would deliver "the same enjoyment characteristics as Marlboros" (Compl. ¶ 53).  The fact that Xavier rejects the low-tar cigarettes currently on the market does hamper his ability to prove that he would have smoked the better-tasting alternative cigarettes proposed in the complaint.

As to James Franklin, Philip Morris cites testimony indicating Franklin never paid attention to the tar levels in cigarettes and did not choose his cigarettes based on tar level (Br. 7–8; Webb Exh. C at 108, 119).  Philip Morris also notes that, like Xavier, Franklin smokes his chosen brand of cigarettes because he likes their flavor (Webb Exh. C at 81, 119).  Philip

United States District Court

For the Northern District of California

1   Morris further cites testimony indicating Franklin has not considered smoking other brands of

2   cigarettes and has not investigated the low-tar cigarette options currently on the market (*id.*

3   at 94, 108, 119, 124–25).  This testimony might make Franklin a tougher sell to a jury, but it is

4   not inconsistent with the theory that he would have smoked the safer cigarettes proposed in the

5   complaint *if* Philip Morris had manufactured them and informed its customers of their attributes.

6          Philip Morris failed to deliver on its bold promise that plaintiffs admitted categorically

7   that they would not have smoked the safer cigarette proposed in the complaint.  Because Philip

8   Morris failed to carry its initial burden of negating the causation element of plaintiffs' design-

9   defect claims, no burden of production is shifted to plaintiffs on that issue, and this order need not

10  reach plaintiffs' corresponding arguments.

11                  **(2)      Consumer Legal Remedies Act Claim (Count Two).**

12         To prevail on their CLRA claim, plaintiffs must show that Philip Morris's conduct was

13  deceptive and that the deception caused their injury.  *Mass. Mutual Life Ins. Co. v. Superior Court*

14  *of San Diego County*, 97 Cal. App. 4th 1282, 1292 (2002).  Plaintiffs are unable to do so.

15  Plaintiffs have not provided a viable theory — much less any admissible evidence — to explain

16  how access to more or better information about Philip Morris's manufacturing capabilities would

17  have prevented their allegedly increased risk of lung cancer.

18         As Philip Morris notes, neither plaintiff claims to have begun or continued smoking in

19  reliance on advertisements or other statements by Philip Morris (Br. 10).  On the contrary,

20  plaintiffs testified that their smoking decisions were based on social influences and the enjoyable

21  taste of Marlboro cigarettes (Webb Exh. D at 64; Webb Exh. C at 60).  Xavier testified that he

22  had no other reasons for smoking Marlboro cigarettes (Webb Exh. D at 64).  Franklin testified

23  that cigarette advertisements had "pretty much nothing" to do with his decision to buy Marlboros

24  (Webb Exh. C at 60–61).  This showing on the reliance element of the CLRA claim is sufficient

25  to negate that element and shift the burden of production to plaintiffs.

26         Plaintiffs counter that not only affirmative misrepresentations, but also deceptive

27  omissions, are actionable under the CLRA.  *Daugherty v. Am. Honda Motor Co.*, 144 Cal.

28  App. 4th 824, 835 (2006).  Specifically, plaintiffs assert that Philip Morris's alleged "failure to

United States District Court

For the Northern District of California

disclose the presence of unnecessary carcinogens in Marlboros, and its own ability to create a substantially safer alternative design" constitutes an actionable omission (Opp. 13). This alleged omission would be actionable *if* it were "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose," and *if* defendants actually relied on it. *Daugherty*, 144 Cal. App. 4th at 835; *Mass. Mutual*, 97 Cal. App. 4th at 1292–93. Defendants, however, offer no proof that these requirements are met (Opp. 12–15).

The only evidence plaintiffs cite to show reliance is a lawyer-drafted statement that appears in both plaintiffs' declarations submitted in opposition to the summary judgment motion: "If I had seen or heard an advertisement plainly stating that the flavor, taste, and nicotine that I liked in Marlboros could be delivered with fewer or no cancer-causing tars, I would have sought and smoked such a cigarette" (Phillips Exh. 15 ¶ 4; Phillips Exh. 16 ¶ 6). This declaration statement is not enough to defeat summary judgment.

*First*, this statement assumes the market-availability of the safer alternative cigarettes proposed in the complaint, whereas the fundamental premise of the complaint is that such cigarettes were *not* on the market. As such, it fails to answer the question of how hypothetical information about potential products Philip Morris never made could have prevented plaintiffs' alleged harm from cigarettes Philip Morris did sell. *Second*, this statement poses a counterfactual hypothesis. To prove reliance, plaintiffs must produce evidence that plaintiffs actually did change their position based on representations or omissions Philip Morris actually did make. Specifically, plaintiffs would need to show that they gleaned from Philip Morris's communications the misimpression that Marlboros were designed to be as safe as reasonably technologically feasible, and that this misimpression somehow led to their increased lung-cancer risk. The averment that plaintiffs *would have* relied on other representations Philip Morris never made is beside the point.

This order finds that plaintiffs' CLRA claim fails for inability to prove reliance. The claim also cannot be saved by plaintiffs' Rule 56(f) argument, which was explained with reference to the breach-of-warranty claim. Both plaintiffs have been deposed, and neither testified that he relied on any affirmative representations or omissions by Philip Morris in making

his smoking decisions.  Moreover, plaintiffs cite no decision recognizing a CLRA claim based on the theory that misrepresentations or omissions regarding the feasibility of a *potential alternative product* "misled" a consumer into using and sustaining injury from a product actually sold (Opp. 14).  Such a novel theory should be blessed by the appellate court before large amounts of resources are invested in prosecuting it.

Plaintiffs' CLRA claim (count two) is **DISMISSED**.  Only two claims for relief now remain in the action:  strict liability design defect (count four); and negligent design and testing (count five).

### C.    Statute of Limitations (All Remaining Claims).

The third line of attack in Philip Morris's summary judgment motion targets the timeliness of plaintiffs' claims.  Philip Morris asserts that California's two-year limitations period for personal injuries applies to all of plaintiffs' remaining claims for relief (Br. 11 n.5).  Plaintiffs do not dispute that the two-year period applies (Opp. 20–24).  Philip Morris, however, cites *no evidence at all* showing that plaintiffs' claims accrued at any time before the complaint in this action was filed.  Accordingly, this order need not make any pronouncement on the correct limitations period in order to resolve the timeliness issue at hand.

In California, the default rule for accrual is that "an action accrues on the date of injury." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988).  Where appropriate, this default rule is modified by the discovery rule, which "provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Ibid.*  In applying the discovery rule, "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Ibid.*  Thus, the discovery rule in effect provides that a limitations period "does not commence until a plaintiff discovers, or reasonably could have discovered, his claim." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002).  The parties agree that the discovery rule applies in the instant action, but they have differing views as to what, exactly, plaintiffs should have discovered (Br. 11–14; Opp. 20–24).

United States District Court

For the Northern District of California

14

United States District Court

For the Northern District of California

The alleged injury underlying plaintiffs' claims is their increased risk of lung cancer due to having smoked 146,000 Marlboro cigarettes, *as compared to the risk level that would have resulted from smoking 146,000 cigarettes that were designed to be less carcinogenic.* The relevant risk increase is *not* the difference between plaintiffs' actual risk level and the risk level they would face had they not smoked any cigarettes at all. Philip Morris conveniently overlooks this distinction. At the same time, plaintiffs' imprecise statements contribute to muddying the water as well. Plaintiffs repeatedly reference the alleged need for medical monitoring associated with their increased risk of lung cancer, and emphasize that the form of monitoring they seek — low-dose CT scans — became available only recently. The recent advent of low-dose CT scans is a red herring. As explained in the order granting Philip Morris's motion to dismiss, medical monitoring is only a *remedy* in California (Dkt. No. 39 at 5). Medical monitoring is not a stand-alone claim, and it is not an essential element of any of plaintiffs' claims for relief. As such, the suitability of medical monitoring as a remedy for plaintiffs' alleged injuries and the state of the art of low-dose CT scans are irrelevant to the question of when their *claims* were perfected.

Plaintiffs' pleadings link their alleged injury (*i.e.*, their increased lung-cancer risk) to their twenty-pack-year smoking histories. Accordingly, each putative class member's alleged injury became complete when he or she stubbed out his or her 146,000th Marlboro cigarette. For both of the named plaintiffs, this quiet event likely took place during the early 1990s (Br. 13). Under the discovery rule, however, the limitations period for the instant claims did not begin to run until the smokers knew or should have suspected that smoking those cigarettes increased their risk of lung cancer by an amount significantly more than would have been the case if they had instead smoked safer cigarettes that Philip Morris *could have*, but chose not to, manufacture. Notably, plaintiffs allege that Philip Morris improperly concealed and misrepresented information concerning the feasibility of safer alternative cigarette designs (Compl. ¶¶ 91–107). If true, such actions likely would delay the date when Marlboro smokers reasonably could be expected to know or suspect that Marlboro cigarettes were unreasonably or unnecessarily dangerous. Indeed, in its opposition to plaintiffs' motion for class certification, Philip Morris makes much of plaintiffs' deposition testimony indicating that they knew and suspected nothing of the factual and

United States District Court

For the Northern District of California

1   legal theories underlying this action until they were recruited and informed by counsel (Dkt.

2   No. 71 at 25).

3         Having defined the contours of the timeliness issue, this order finds that Philip Morris's

4   timeliness argument fails.  Philip Morris argues that plaintiffs' claims "are barred because they

5   conceded in their depositions that they actually knew about their increased risk of lung cancer

6   well outside the limitations period" (Br. 13).  The deposition testimony Philip Morris cites,

7   however, addresses the wrong "increased risk."  In the cited passages, plaintiffs admit only their

8   long-standing knowledge that cigarette smoking poses health risks, including an increased risk of

9   lung cancer (*e.g.*, Webb Exh. C at 138:14–16; Webb Exh. D at 100:14–19).  The theory that

10  smoking (as opposed to not smoking) increases one's risk of developing lung cancer is *not*

11  plaintiffs' theory for recovery in this action.  Plaintiffs' actual increased-risk theory — that

12  smoking Marlboros increased their lung-cancer risk significantly more than smoking safer

13  alternative cigarettes would have — was not even mentioned in the portions of the deposition

14  transcripts Philip Morris cites.  Accordingly, the evidence Philip Morris relies on to support its

15  timeliness argument has no bearing whatsoever on whether plaintiffs had or should have had the

16  relevant knowledge to discover their injury at an early date.

17        Because Philip Morris failed to carry its initial burden of negating the timeliness element

18  of plaintiffs' claims, no burden of production is shifted to plaintiffs on the timeliness issue.  This

19  order therefore need not reach plaintiffs' other timeliness arguments, such as applicability of the

20  continuing tort doctrine.

21                          *                *                *

22        Philip Morris's motion for summary judgment is **GRANTED IN PART AND DENIED IN**

23  **PART**.  The motion is **GRANTED** as to plaintiffs' claims for breach of implied warranty (count

24  three) and for violation of the California Consumer Legal Remedies Act (count two) but **DENIED**

25  as to all other claims.  Only two claims for relief now remain in this action:  strict liability design

26  defect (count four); and negligent design and testing (count five).

27

28

United States District Court

For the Northern District of California

**3.      PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.**

Plaintiffs' motion for class certification will be considered with respect to the two claims for relief now remaining in this action.  Plaintiffs move for certification of the following class pursuant to both FRCP 23(b)(2) and FRCP 23(b)(3):

> All residents of the State of California as of the date of the filing of the initial Complaint in this action (or such other date as the Court may determine) who:
>
> a)      were fifty (50) years of age or older;
>
> b)      had cigarette smoking histories of twenty pack-years or more using Marlboro cigarettes;
>
> c)      smoked Marlboro cigarettes, or quit smoking Marlboro cigarettes within one (1) year of the date of the filing of the initial Complaint in this action;
>
> d)      had smoked Marlboro cigarettes within the State of California; and
>
> e)      are not diagnosed as suffering from lung cancer, or under investigation by a physician for suspected lung cancer, as of the date that judgment may be entered or relief obtained from this action

(Br. 1).  Plaintiffs' proposed class definition further explains the "pack-year" unit:  "Twenty 'pack-years' represents smoking one pack of Marlboro cigarettes per day for twenty years or the equivalent (*e.g.*, two packs per day for ten years)" (*ibid.*).

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists.  *See, e.g.*, *Dietz v. Comcast Corp.*, No. C 06-06352 (WHA), 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).  Ascertainability is needed for properly enforcing the preclusive effect of final judgment.  The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss.  If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place.  Indeed, courts of appeals have found class

certification to be inappropriate where ascertaining class membership would require

unmanageable individualized inquiry. *See Romberio v. Unumprovident Corp.*,

385 F. App'x 423, 431–33 (6th Cir. 2009); *Newton v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 259 F.3d 154, 187, 191–93 (3d Cir. 2001).

        In order for a proposed class to satisfy the ascertainability requirement, membership must

be determinable from objective, rather than subjective, criteria. *In re Initial Pub. Offerings Sec.*

*Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  In particular, courts "have recognized the difficulty of

identifying class members whose membership in the class depends on each individual's state of

mind." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981).  If a class definition includes a

requirement that cannot be proven directly, and that depends instead upon each putative class

member's feelings and beliefs, then there is no reliable way to ascertain class membership.

Without an objective, reliable way to ascertain class membership, the class quickly would become

unmanageable, and the preclusive effect of final judgment would be easy to evade.

        Plaintiffs' proposed class definition does not describe a group of people whose

membership can be ascertained in a reliable manner.  Specifically, the central condition that class

members smoked Marlboro cigarettes for at least twenty pack-years nullifies plaintiffs' bid for

class certification.  There is no good way to identify such individuals.  A smoker's rate of

cigarette consumption and cigarette brand of choice are liable to change over time, and we cannot

expect smokers to recall the cumulative total of Marlboro packs they have smoked.  Thus, while

the arithmetic total of an individual's Marlboro-smoking history is an "objective" question, it

remains a *question*, and its answer depends on each individual's *subjective estimate* of his or her

long-term smoking habit.  Unlike in many cases, there are no defendant records on point to

identify class members.  There is no reliable way in which smokers themselves could document

their long-term smoking histories.  The question thus would come down to the state of mind of

the putative class member, and it would be easy to fade in or out of the class depending on the

outcome.  This state of affairs is problematic for class certification, and none of plaintiffs'

arguments to the contrary are persuasive.

United States District Court
For the Northern District of California

18

United States District Court

For the Northern District of California

Plaintiffs urge that in order "to fashion a remedy" for a prevailing plaintiff class, a court need only determine "the class' size and distribution, rather than its precise membership" (Reply Br. 3). For the reasons set forth above, this statement is unavailing. Ensuring the ability to fashion a suitable class remedy is not the only purpose served by the ascertainability requirement. Plaintiffs also propose various methods by which class membership might be ascertained, but none of them is satisfactory (Reply Br. 2–4). *First*, plaintiffs proffer broad demographic data regarding the smoking population. This data is not helpful for determining which individual smokers are in the class and which are out.

*Second*, plaintiffs point to Philip Morris's own data respecting its customer base, such as the database of participants in the Marlboro Miles customer loyalty program. The databases Philip Morris maintains to administer its customer loyalty programs are incomplete for purposes of this action, because not all Marlboro smokers may be presumed to have participated in these programs. For example, it is unlikely that every potential class member chose to participate in the Marlboro Miles program of the 1990s, which allowed smokers to collect "miles" printed on cigarette packages and redeem them for Marlboro merchandise available through a mail-order catalog (Phillips Exh. 126 at 34715).

*Third*, plaintiffs suggest inviting potential class members to submit affidavits attesting to their belief that they have smoked 146,000 Marlboro cigarettes. Such affidavits would be unreliable for several reasons, one of which is the subjective memory problem described above. Swearing "I smoked 146,000 Marlboro cigarettes" is categorically different from swearing "I have been to Paris, France," or "I am Jewish," or even "I was within ten miles of the toxic explosion on the day it happened." The memory problem is compounded by incentives individuals would have to associate with a successful class or dissociate from an unsuccessful one. Plaintiffs argue that individuals "have little reason to lie given the lack of pecuniary gain" (Reply Br. 2), but this order finds to the contrary. For example, long-term smokers of other cigarette brands and long-term smokers who have smoked fewer than 146,000 cigarettes may desire medical monitoring and be tempted to free-ride on relief granted in this action. At trial, Philip Morris will be able to cross-examine Xavier and Franklin regarding their smoking

1   histories.  If absent class members are permitted to testify to *their* smoking histories by way of

2   affidavit, on the other hand, Philip Morris would be forced to accept their estimates without the

3   benefit of cross-examination.  Such a procedure would not be proper or just.

4          *Fourth*, plaintiffs suggest that each individual's "medical eligibility for surveillance"

5   ultimately will be determined by a referring physician (Reply Br. 4).  If this argument has any

6   bearing on ascertainability of class membership, it serves only to complicate the issue.

7          After the hearing on the instant motions, plaintiffs filed a letter arguing that "the *cy pres* or

8   fluid recovery concept" could address ascertainability concerns (Dkt. No. 94).  The decisions

9   cited in plaintiff's letter illustrate that the *cy pres* doctrine governs distribution of unclaimed

10  monies.  Applicability of this doctrine presupposes a scenario in which plaintiffs have emerged

11  victorious at the end of this litigation.  The doctrine therefore does not help plaintiffs overcome

12  the problem of how to enforce the res judicata effect of final judgment against an *un*successful,

13  unascertainable plaintiff class.

14         Plaintiffs' ascertainability arguments boil down to the proposition that there is much good

15  that could be done for many smokers.  Plaintiffs emphasize that practical, albeit possibly

16  imperfect, measures could be taken to help save a significant number of lives.  That may be so.

17  But if a plaintiff class wins, any relief must be reasonably limited to those who are entitled to it,

18  and *if a plaintiff class loses, the preclusive effect of final judgment must be enforced against all*

19  *class members*.  Plaintiffs utterly fail to provide a satisfactory answer to the problem of how

20  membership in the proposed plaintiff class could be reliably ascertained for purposes of res

21  judicata in future actions if plaintiffs were to lose this action on behalf of a class.

22         In sum, this order finds that individuals with a twenty-pack-year history as Marlboro

23  smokers could not be identified through any reliable, manageable means.  Accordingly, the

24  proposed class lacks ascertainability.  Further, any revision of plaintiffs' proposed class definition

25  aimed at curing the ascertainability defect would be futile, because it necessarily would disrupt

26  plaintiffs' theories of recovery.  Because membership in their proposed class is hopelessly

27  unascertainable, plaintiffs' motion for class certification is **DENIED**.  This order need not reach the

28  other, explicit requirements of Rule 23.

**CONCLUSION**

Defendant's motion for judgment on the pleadings is **DENIED**.  Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows.  The motion is **GRANTED** as to plaintiffs' claims for breach of implied warranty (count three) and for violation of the California Consumer Legal Remedies Act (count two) but **DENIED** as to all other remaining claims.  Plaintiffs' motion for class certification is **DENIED**.  Plaintiffs' requests for appointment of class representatives and class counsel are **MOOT**.

Only two claims for relief now remain in the action:  strict liability design defect (count four); and negligent design and testing (count five).  Plaintiffs may pursue these claims in their individual capacities, but not as representatives of a class.

The motions decided by this order did not reach the fundamental issue of whether the facts alleged in the complaint actually rise to the level of a design defect or negligent design and testing.  Having considered and rejected defendant's narrow attacks on counts four and five, this order presupposes that those counts otherwise state viable claims for relief.  The possibility of a future challenge to that presumption, however, has not been foreclosed.

**IT IS SO ORDERED.**

Dated:  April 18, 2011.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

21